HIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHARLES GAME | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| PUBLIX SUPER MARKETS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Charles Game ("Plaintiff" or "Game") and files this *Complaint*, as follows.

### INTRODUCTION

1. This is an action for discrimination in employment in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. as amended ("ADA"). The evidence will show that Game lives with a number of physical impairments that substantially limit major life functions, including the digestive and bowel functions. Game worked for many years as a Deli Clerk for Defendant Publix Super Markets, Inc. ("Publix"). Game's limitations required him to maintain a strict and regular daily schedule in order to achieve adequate nutrition and manage his bowel functions in such a way that he could maintain a

productive work life. On advice of his physician, he sought reasonable accommodations from Publix in the form of a regular, non-varying schedule that would permit him to manage his condition. Publix honored his request for many years. However, upon a change in management at the store where Game was employed, Publix began to remove the accommodations, requiring Game to work varying, often unpredictable shifts. Game pleaded with his manager to return to the regular shifts; however, his manager refused. For a period of roughly one year, from May 2011 to May 2012, Game was required to work variable shifts, causing him great stress, discomfort, and anxiety. This prevented Game from being able to work full-time, at great financial detriment to himself and his family. This change in scheduling further caused Game severe emotional and psychological distress, such that he eventually was unable to continue his employment with Publix.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims, which turn on questions of federal law. 28 U.S.C. § 1331.

3. Plaintiff has exhausted his administrative remedies with respect to his claims under the by timely filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) with respect to these claims. A

Notice of Right to Sue ("RTS") has been issued by EEOC to Game. This action was timely filed within 90 days of Plaintiff's receipt of the RTS.

4. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, because the Defendant resides therein and the events giving rise to this Complaint occurred therein.

## PARTIES

5. Game is a citizen of the State of Georgia and a resident of Kennesaw, Georgia. At all times relevant to this Complaint, he was an "employee" as that term is defined by the ADA.

6. Defendant Publix is a foreign corporation authorized to do business within the state of Georgia. At all times relevant to this complaint, Publix owned and operated a supermarket at 1727 Mars Hill Road, Acworth, Georgia 30101, which is where Game worked. Publix may be served with process through their registered agent, Corporation Process Company, at their offices at 2180 Satellite Blvd., Suite 400, Duluth, Georgia 30097.

## FACTS

7. Game suffers from a number of physical ailments that affect his digestive and bowel systems, substantially impairing him in those functions.

8. Game further suffers from severe stress and anxiety related to his digestive and bowel dysfunction, in situations in which he is not able to control said dysfunction.

9. Game began his employment with Publix in 2001, when he was hired as a Deli Clerk at Publix's supermarket on 1727 Mars Hill Road in Acworth, Georgia. Game held this position until his separation on December 19, 2012.

10. From the beginning of his employment, Game regularly communicated with his managers regarding his need for a set, predictable schedule that would not require him to work late in the evenings. Game communicated to his managers that this regular schedule was necessary due to medical complications relating to his digestion.

11. From at least November 2002 until June 2009, under Store Manager Edward Burg, Publix accommodated this request. Game was scheduled to work a regular schedule, generally beginning at 6:00 a.m. and ending no later than 5:00 p.m., with few occasional exceptions. Under this schedule, Game was able to maintain full time employment while also managing a predictable, regular schedule, conducive to his digestive health.

12. Throughout his employment with Publix, Game received satisfactory to favorable performance reviews. Up until the events giving rise to this

Complaint, Game had no significant history of discipline in his employment with Publix.

13. On or about June 9, 2009, Michael Chester ("Chester") replaced Edward Burg as Store Manager.

14. On or around November 10, 2010, Chester met with Game and informed him he would no longer be permitted to work regular shifts. Instead, he would be required to fluctuate shifts throughout the week, sometimes opening the store, sometimes working an afternoon shift, and sometimes working a closing shift.

15. In that same meeting, Game explained to Chester the medical conditions that had required him to work opening shifts only. Chester told Game he required a note from Game's doctor confirming the need for accommodation.

16. On or about January 4, 2011, Game supplied Chester with a letter from his doctor, describing his medical limitations and stating that Game would need to work morning shifts only in order to maintain proper nutrition and avoid bowel complications at work. For some time thereafter, Chester allowed Game to continue working morning shifts only.

17. However, in May 2011, Chester began refusing Game the reasonable accommodation that Publix had provided up until that point. Chester informed Game he would no longer be permitted to work a regular morning shift. Chester

told Game that he would either have to begin working variable shifts (which Game could not do due to his condition); or, in the alternative, move to a part-time position in the customer service department.

18. The part-time position in the customer service department would have been significantly less desirable—both objectively and subjectively—in its duties and responsibilities. Moreover, the position had uncertain hours and would not afford Game the opportunity to work a full-time schedule and therefore earn the wages he had come to rely upon to support himself.

19. Game insisted that he continue to be allowed to work his full-time position as Deli Clerk, with the accommodation that Publix had historically provided.

20. On or about June 1, 2011, Chester called Game's gastrointestinologist, Dr. Charles Gregory Nesmith ("Dr. Nesmith") without authorization from Game, to discuss Game's medical condition. Chester then confronted Game and told him (untruthfully) that Dr. Nesmith had told him the morning shift accommodation was not medically necessary.

21. Chester's contacting Game's physician, without consent, to discuss Game's medical condition, caused Game great emotional distress.

22. On or about May 16, 2011, Chester told Game that he needed an additional doctor's note defining his needed accommodation. Chester further

indicated to Game that he was reluctant to continue honoring the requested accommodation.

23. On or about July 1, 2011, Game presented to Chester another letter from Dr. Nesmith, stating, again, that in order to achieve adequate nutrition and avoid post-meal complications, Game needed to adhere to a strict meal and work schedule. Dr. Nesmith advised that Game be scheduled to work between 6 a.m. and 5 p.m. only.

24. In response to this second letter from Dr. Nesmith, Chester informed Game that he would not allow him to work regular shifts, as requested. Instead, Chester informed Game that he would be required to work variable shifts. Chester informed Game that if he needed to clock out by 5 p.m., Game would be required to use intermittent FMLA leave for that purpose.

25. Game tried his best to work the variable shift schedule ordered by Chester. From early July 2011, to roughly September 12, 2011, Game worked variable shifts, oftentimes working past 5 p.m. During this time, he experienced great distress and discomfort. He developed great anxiety about having bowel complications in the evenings. He was not able to maintain the strict daily schedule that he had maintained for years in order to allow himself to achieve proper nutrition and avoid painful digestive complications. He experienced great physical and emotional distress during this period.

26. Beginning September 12, 2011, Chester refused to allow Game to work past 5 p.m, while at the same time keeping him on the variable shift schedule. Game would often be assigned a shift that ended well after 5 p.m.; but, he would have to clock out before the shift ended, resulting in a loss of pay.

27. On or about October 20, 2011, Game met with Chester and pleaded with him to allow him to go back to the regular, opening shift schedule. However, Chester refused. Chester informed him that he would continue to be assigned to varying shifts; and that if his scheduled shift ended in the evening, Game would nonetheless have to clock out by 5 p.m.

28. Under great financial strain, Game requested that Dr. Nesmith issue an amended letter stating that Game could try and work the varying schedules required by Chester, and would not have to clock out by 5 p.m.

29. Based on this letter, Chester lifted the requirement that Game clock out by 5 p.m. each day, and continued Game on the variable shift schedule.

30. From this time until roughly May 25, 2012, Game worked variable shifts, oftentimes working past 5 p.m. During this time, he experienced great distress and discomfort. He developed great anxiety about having bowel complications in the evenings. He was not able to maintain the strict daily schedule that he had maintained for years in order to allow himself to achieve

proper nutrition and avoid painful digestive complications. He experienced great physical and emotional distress during this period.

31.    On or about May 25, 2012, Game again requested a return to his regular, opening-shift schedule, due to severe stress and anxiety he was experiencing as a result of the variable schedule. However, Chester again refused.

32.    At this time, Game invoked his right to FMLA leave, due to severe stress and anxiety he had developed due to the irregular schedule that Publix required him to work in order to maintain his employment and position.

33.    Game attempted to return to work on August 6, 2012. Game received a weekly schedule that, again, showed him being required to work variable shifts, in contravention of the reasonable accommodations that would allow him to work.

34.    Game met with Chester on August 8, 2012, and pleaded with him to allow him to return to the regular, opening-shift only schedule that he had been permitted previously. However, Chester refused.

35.    Around this same time, Game presented Chester with a form from his psychiatrist, stating that the requirement that he work variable shifts was causing severe stress and anxiety, and requesting as a reasonable accommodation that he be returned to working regular opening shifts.

36. The following day, August 9, 2012, Game presented Publix with certification from his psychiatrist that he needed to take an indefinite period of leave due to severe stress and anxiety.

37. Beginning August 9, 2012, and continuing through December 19, 2012, Game was on leave and receiving disability benefits. He was not able to return to work during this time due to Publix's refusal to accommodate his disabilities.

38. On December 19, 2012, Game was "administratively separated" from the company due to his inability to return to work upon the expiration of his disability insurance benefit term.

39. Upon information and belief, a number of Game's non-disabled Publix co-workers were permitted to work regular, non-variable schedules, for reasons unrelated to disabilities, and for no valid reason that would distinguish those employees from Game.

### LEGAL CLAIM

#### *Failure to make reasonable accommodation*

40. By this reference, Plaintiff incorporates the previous paragraphs as if fully set forth herein.

41. Game has exhausted his administrative remedies with regard to his ADA claims.

42. The ADA prohibits discrimination against a disabled individual who, with or without a reasonable accommodation, can perform the essential functions of his job. 42 U.S.C. §12112.

43. Discrimination under the ADA includes failing to make a reasonable accommodation for an individual with a disability. A reasonable accommodation includes adjustments in scheduling that will permit a disabled employee to earn a regular full-time wage on par with non-disabled employees.

44. By refusing to allow Game to work a regular schedule of opening shifts; and by requiring Game to work variable shifts, Publix refused him a reasonable accommodation.

45. Game's requested accommodation would not have caused undue hardship to Home Depot.

46. Publix's denial of reasonable accommodations to Game caused damage to him, including lost wages and emotional distress.

47. Publix's denial of reasonable accommodation to Game proximately resulted in the separation of his employment, resulting in significant lost wages.

48. Upon information and belief, Publix's denial of reasonable accommodations was carried out in bad faith.

**WHEREFORE**, Plaintiff prays that this Court:

A)   Afford Plaintiff a trial by jury on all issues so triable;

B)   Award to Plaintiff damages to compensate him for all injuries proximately resulting from the Defendants' actions, in an amount to be determined by the enlightened conscious of the jury;

C)   Award to Plaintiff punitive damages due to the intentional and deliberately indifferent nature of Defendants' conduct;

D)   Deem Plaintiff a prevailing party and award him attorneys' fees and expenses of litigation;

E)   Award Plaintiff pre-judgment and post-judgment interest;

F)   Award Plaintiff such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted, this October 3, 2013.

/s/ James Radford
James Radford
Georgia Bar No. 108007

James Radford, LLC
545 N. McDonough St., Suite 212
Decatur, Georgia 30030
(678) 369-3609
james@jamesradford.com

/s/ Caleb Gross
Caleb Gross
Georgia Bar No. 960323

James Radford, LLC
545 N. McDonough St., Suite 212
Decatur, Georgia 30030
(678) 369-3609
caleb@jamesradford.com